# Marles Carved Moulding Company *v.* Stulb, Appellant.

*Corporations—Stock—Stock subscription—Bonus of stock.*

A stock subscription is not invalid because a bonus of stock is to be given with the stock subscribed for, where it appears that the bonus stock is to come, not from the company, but from a person to whom it had been issued in the payment of patent rights assigned to the company.

A subscriber to the stock of a corporation cannot set up as a defense, in a suit against him upon his subscription, that when his signature was obtained the agent of the company represented to him that he never would be called upon to pay one cent of the subscription price, and that he subscribed under this condition.

Argued Jan. 9, 1906.   Appeal, No. 122, Jan. T., 1905, by defendant, from judgment of C. P. No. 4, Phila. Co., June T., 1902, No. 2,525, on verdict for plaintiff in case of Marles Carved Moulding Co. v. Theodore B. Stulb.   Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Assumpsit on a stock subscription.

At the trial it appeared that the subscription paper was as follows :

" MARLES CARVED MOULDING COMPANY.

" Room 614 Real Estate Trust Building, Philadelphia, Pa. Capital $4,500,000 consisting of 900,000 shares of $5.00 each. Preferred stock 100,000 shares.   Common stock 800,000 shares.

" Subscriptions hereunder are made upon the following understanding :

"1. That this company has acquired letters patent of the United States of America granted to Henry Marles, No. 616,002, reissued as No. 11,839 July 3, 1900; No. 653,813 July 17, 1900, and No. 658,270 September 18, 1900, covering the Marles Carving Machines.

" 2. That the preferred stock shall receive all of the net earnings up to its total par value, so returning the full amount of this subscription, and it shall then be converted into common stock.    That the said preferred stock shall be a first lien to the amount of its principal upon the assets of the company. That without the consent of two-thirds in amount of the preferred stock there shall not be created any other stock ranking equally with or in priority to it.

" 3. That with each share of preferred stock the subscriber shall receive as a bonus three shares of full paid common stock from the Real Estate Trust Company of Philadelphia, trustee, deliverable upon the subscription payment.

"4. That no subscription shall be binding unless and until $350,000 of preferred  stock is subscribed,  the  remaining $150,000, or any part thereof not subscribed hereunder, to be retained in the treasury to be sold if required, for the benefit of the company.    Subscriptions may be taken upon duplicates thereof, all of which shall be taken as one original.

" 5. The company reserves the right, in event of over subscription, to make allotments as it may see fit.

" We, the undersigned, hereby subscribe to the number of shares of the preferred capital stock of the Marles Carved Moulding Company at $5.00 per share, set opposite our respective names below, agreeing to pay for the same to the Real Estate Trust Company of Philadelphia, trustee, after $350,000 has been subscribed hereunder, 25% on ten days call and 25% each in thirty, sixty and ninety days thereafter."

During the trial counsel for the defendant made the following offer:

Counsel for defendant proposes to prove that Richard F. Loper, the witness on the stand, acting as agent for the Marles Carved Moulding Company, obtained the signature of the defendant in this case under the representation that he never

would be called upon to pay one cent of the subscription price, and that the defendant subscribed under these conditions and that he had authority to make such representation to Mr. Stulb and others, and that such authority was given to him by the company.

Objected to.  Objection sustained.  Exception noted for defendant by direction of the court.  [1]

Mr. Grady : Describe as accurately as you can remember the conversation you had with Mr. Stulb concerning this subscription.

Objected to.  Objection sustained.  Exception noted for defendant by direction of the court.  [2]

Defendant was asked this question : " Q. What was the inducement held out to you as the result of which you subscribed to this stock ? "

Objected to.

" Q. What was said to you ? "

The Court : By whom ?

Mr. Grady : By anybody that had authority to obtain his subscription.

The Court : In the first place you will have to show the authority.

Objection sustained.  Exception noted for defendant by direction of the court.  [3]

" Q. Were you advised by anyone in authority that no assessment would be required of you ? "

Objected to.  Objection sustained.  Exception noted for defendant by direction of the court.  [4]

The court gave binding instructions for plaintiff.

Verdict and judgment for plaintiff for $3,006.66.   Defendant appealed.

*Errors assigned* were (1–4) rulings on evidence, quoting the bill of exceptions, and (5) in giving binding instructions for plaintiff.

*J. Howard Gendell,* with him *John C. Grady,* for appellant. —A contract by a promoter to take stock off the hands of a subscriber is valid: McClymonds v. Stewart, 2 Pa. Superior Ct. 310.

The transaction looks like a scheme on the part of Granger to make a fortune out of the sale of a patent on which he had an option. This he cannot lawfully do: Simons v. Vulcan Oil & Mining Co., 61 Pa. 202; Short v. Stevenson, 63 Pa. 95; Yeaney v. Keck, 183 Pa. 532; Rice's App., 79 Pa. 168; Russell v. Fuel Gas Co., 184 Pa. 102.

*John Hampton Barnes,* for appellee.—It is not competent to vary the terms of a stock subscription paper by parol evidence between the subscriber and the person who offers the paper for subscription, no matter who that person may be: Miller v. R. R. Co., 87 Pa. 95; Guarantee, etc., Co. v. Mayer, 141 Pa. 511; Phila., etc., Ry. Co. v. Conway, 177 Pa. 364.

A subscription to stock of a corporation is not only an undertaking with the corporation, but with all other stockholders, and accordingly the corporation itself cannot relieve: Bristol Iron & Steel Co. v. Selliez, 175 Pa. 18; Phila., etc., Ry. Co. v. Conway, 177 Pa. 364.

OPINION BY MR. JUSTICE BROWN, May 7, 1906:

The appellant subscribed for five hundred shares of the preferred capital stock of the Marles Carved Moulding Company. There were certain conditions annexed to his subscription, all of which have been complied with by the company. One of these was that he was to receive from the Real Estate Trust Company of Philadelphia, for each share of stock subscribed for by him, three shares of full paid common stock of the company. Of this condition he now complains and asks us to say that the agreement of the company that he should receive this bonus is such a fraud in the eye of the law as invalidates all subscriptions made under it. It is a sufficient answer to this to say that the bonus stock was not to be issued by the company, but by the Real Estate Trust Company for A. O. Granger, to whom it was to be issued by the appellee in part payment of patent rights to be acquired from him by the company. The issue of this stock to him for such a purpose was valid under the constitution and the act of April 29, 1874, and, after he received it, he could do as he pleased with it in inducing others to subscribe to the capital stock of the company. We have discussed this more fully in an opinion this day filed: Finletter, Receiver,

v. The Acetylene Light, Heat and Power Company et al., ante p. 86.

By the first, second, third and fourth assignments of error the appellant complains that he was not allowed to prove that when his signature was obtained the agent of the company represented to him that he never would be called upon to pay one cent of the subscription price, and that he subscribed under this condition. If he had been allowed to prove this, it would simply have been proof of a fraud that he, in connection with the representative of the company, undertook to perpetrate upon the other subscribers to the capital stock, for his undertaking was not only with the corporation but with them as well. In Miller v. Hanover Junction, etc., Railroad Company, 87 Pa. 95, the action was to recover the amount of subscription to the stock of the company, and the defendant offered to prove on the trial that he had been induced to subscribe by reason of certain parol representations made to him by officers of the company that the railroad should be built, not as stated in the subscription book, but along his house, and upon the east side of a river, and that he would not be obliged to pay until the road was so built. In holding that this evidence was properly rejected, what we said of the defendant there applies to the one here : " Had he expressed in writing, on the subscription book, the condition proposed to be proved, it would have been fair notice, to his fellow-subscribers, that his subscription amounted to nothing ; was, in fact, a mere sham, since the condition, opposed, as it was, not only to the expressed action of the company but to the condition involved in every other subscription, could not possibly be enforced. Now, as we have already shown, this subscription was specially designed to carry out a common adventure, in which the company was but a means used for its accomplishment, and the interests of which were but secondary; hence it follows, that if Miller succeeded in avoiding his obligation, he does so at the expense of his co-subscribers and in fraud of their rights. Every one who signed after him did so on the faith of his signature, as he did upon the faith of the signatures of those who preceded him, and to permit him now to set up a secret parol arrangement, by which he may be released whilst his fellows continue to be bound, would be anything but just. As was said in the

case of Graff v. The Railroad Co., 7 Casey, 489 (per WOODWARD, J.), ' a subscription to a joint stock is not only an undertaking to the company, but with all other subscribers. Such contracts are trilateral, and even if fraudulent as between two of the parties, they are to be enforced for the benefit of the third.' This quotation expresses a principle applicable to the case in hand, and aptly illustrates the reason why the defendant should be estopped from setting up the secret parol agreement between himself and the agents of the company." The assignments are all overruled and the judgment is affirmed.